Case 4:24-cv-00474   Document 31   Filed on 10/31/24 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
November 01, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AUDREY M. NKADI, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 4:24-cv-00474 |
| § | |
| ARCON CREDIT SOLUTIONS, LLC, and § | |
| ABSOLUTE RESOLUTIONS § | |
| INVESTMENTS, LLC, § | |
| § | |
| *Defendants.* § | |

## ORDER

Pending before the Court is Defendants' Arcon Credit Solutions, LLC ("Arcon") and Absolute Resolutions Investments, LLC ("Absolute") (collectively referred to as "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 19). Plaintiff Audrey M. Nkadi ("Plaintiff" or "Nkadi") filed a response in opposition. (Doc. No. 26). Defendants replied. (Doc. No. 29). After considering the applicable law, motion, response, and reply, the Court hereby DENIES Defendants' Motion. (Doc. No. 19).

### I. Background

This is a case involving alleged harassment by a debt collector. Plaintiff alleges that Defendants attempted to collect debt associated with a Best Buy credit card (the "Debt"), purportedly owned by an unrelated person named "Shuan Purificacion." (Doc. No. 13 at 3). Best Buy sold the Debt to Defendant Absolute. (*Id.*). Absolute then hired Arcon to collect the Debt. (*Id.*). Plaintiff contends that she is not associate with the Debt, but nonetheless received "numerous text messages over a short period of time" directed toward Shuan. (*Id.*). Though Plaintiff does not allege an exact number of messages she received from Defendants, Defendants contend they sent

1

a total of three text messages to Plaintiff's phone.[1] (Doc. No. 19 at 9). An example of the text messages Plaintiff received from Arcon is as follows:

> Shuan, Arcon Credit Solutions is a debt collector contacting you about your Best Buy Visa account Ref. # 391116 with us. We would like to discuss an offer with you. Please contact us at 833-976-0969 or visit our payment portal at https://securepayarconcredit.com/login/epc/391116. For our Terms of Use, visit https://arconcredit.com/terms-of-use/. Reply STOP to cancel.

(*Id.*). Plaintiff contends that, as a result of receiving these messages, she suffered invasion of privacy, aggravation, exhaustion of time and expenses contacting an attorney, and emotional distress with physical manifestations including increased blood pressure. (*Id.* at 4).

Nkadi asserts three causes of action in her Amended Complaint, alleging that Defendants violated: (1) the Telephone Consumer Protection Act ("TCPA"); (2) the Fair Debt Collection Practices Act ("FDCPA"); and (3) the Texas Debt Collection Act ("TDCA"). *See* (*Id.*). Defendant now moves to dismiss the suit, contending a lack of subject matter jurisdiction under Federal Rule of Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (Doc. No. 19).

## II. Legal Standard

*A. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331-32. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95

---

[1] If true, this eventually might be the basis of a Rule 56 motion, but it is unavailing in a motion to dismiss where the Court must assume all the factual allegations in the complaint are true.

2

(1998)). A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiff, as the party asserting jurisdiction, bears the burden of proof to defeat a Rule 12(b)(1) motion to dismiss. *Id.*

   B. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for

3

relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

Defendant contends that Plaintiff's second and third causes of action—violations of the FDCPA and TDCA—must be dismissed, claiming the Court does not have subject matter jurisdiction because Plaintiff lacks Article III standing. As for Plaintiff's first cause of action—violation of the TCPA—Defendant argues that Plaintiff failed to state a claim upon which relief may be granted.

#### A. Rule 12(b)(1)

The Article III requirement of a case or controversy is a fundamental aspect of the Court's jurisdiction. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, "a plaintiff must show: (i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). "As the party invoking federal jurisdiction," Plaintiff "bear[s] the burden of demonstrating" standing to bring the claims alleged. *Id.* at 2207. A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

Primarily at issue here is the first element—injury in fact. To establish an injury in fact, a plaintiff "must show that he or she suffered 'an invasion of a legally protected interest'" that goes beyond "conjectural or hypothetical." *Spokeo, Inc. v. Roberts*, 578 U.S. 330, 339 (2016) (citing

*Lujan*, 504 U.S. at 560). Whether an injury is "concrete" is not, however, necessarily synonymous with "tangible." *Spokeo*, 578 U.S. at 340. Although tangible injuries are perhaps easier to recognize, intangible injuries can nevertheless be concrete. *Id.*

With respect to the concrete-harm requirement in particular, *Spokeo* indicates that courts should assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *TransUnion*, 594 U.S. at 424 (citing *Spokeo*, 578 U.S. at 341). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion*, 594 U.S. at 424.

As noted above, Plaintiff contends that, as a result of receiving the text messages, she "suffered concrete harm" via invasion of privacy, aggravation, exhaustion of time and expenses contacting an attorney, and emotional distress with physical manifestations including increased blood pressure. (Doc. No. 13 at 4).

As an initial matter, loss of personal time must be tied to a more concrete injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see also Manzanarez v. Madera Collection Servs.*, No. 1:23-CV-00258-JLT-EPG, 2024 WL 1241775, at *4 (E.D. Cal. Mar. 22, 2024). To allow a plaintiff to manufacture standing by claiming wasted time or expense would essentially do away with the requirement of standing altogether, as plaintiffs could manufacture standing simply by "inflicting harm on themselves." *See Clapper*, 568 U.S. at 416. Thus, exhaustion of time and expense contacting an attorney will not suffice as a concrete injury. Moreover, the Court finds Plaintiff's statement that she suffered "concrete harm" to be conclusory. *See Lujan*, 497 U.S. 898–99 (1990) (concluding that assertions that an organization's mission had been "significantly impaired," its interests "had been injured," and it "would be irreparably harmed" were too conclusory to establish Article III standing).

5

Still, the Court is not convinced that Plaintiff is wholly without standing. While Plaintiff's claim that she suffered emotional distress as a result of receiving the text messages is weak, it is at least colorable.

Plaintiff asserts claims under the FDCPA, which states that a debt collector is prohibited from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Plaintiff also alleges Defendant violated § 1692f of the FDCPA, which provides that a debt collector is prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." Plaintiff asserts that she suffered emotional distress as a result of these alleged violations.

Defendants maintain that emotional distress is not sufficient to give rise to Article III standing. The Fifth Circuit disagrees. The Fifth Circuit explicitly recognizes emotional distress as an injury-in-fact. *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022) (in a suit brought under the FDCPA, the Fifth Circuit found that "a plaintiff can sue for damages if the risk materializes or causes a separate injury-in-fact, such as emotional distress."); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (in another FDCPA suit, the court observed that, in *Perez*, the Fifth Circuit recognized that "'emotional distress' is a traditional harm that satisfies *TransUnion*'s concreteness requirement."). Defendant cites *Perez* in its Motion, stating that Plaintiff "has not analogized the alleged emotional harm to a comparable common-law harm that is enough for the Court to conclude that her asserted emotional distress gives her standing to pursue claims against Defendants." (Doc. No. 19 at 6–7).

While it is true that the Fifth Circuit states that "[a] plaintiff always needs a concrete injury to bring suit, and injuries are concrete only if they bear a 'close relationship' to injuries that courts have traditionally recognized as concrete," the *Perez* court then goes on to explain that emotional

6

distress is an injury-in-fact. *Perez*, 45 F.4th at 822, 824. Two years later, the Fifth Circuit expressly stated that *Perez* "explicitly recognizes emotional distress as a concrete injury." *Calogero*, 95 F.4th at 958. Thus, Defendants' claim that emotional distress is not a concrete injury and is thus insufficient to give rise to Article III standing is without merit. The Court finds that Plaintiff has Article III standing to proceed with her FDCPA claim.

Additionally, Plaintiff has standing to bring her TDCA claim. Plaintiff's claim regarding the TDCA is similar to her FDCPA claims. Plaintiff brings her claim under § 392.302(4) of the TDCA, which states that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." Plaintiff asserts that she suffered emotional distress due to "Defendants' persistent contact attempts via text messages to collect the Debt." (Doc. No. 13 at 8). Since the Fifth Circuit finds emotional distress sufficient to establish standing under the FDCPA, it is only logical that the Court find that Plaintiff also has standing under the TDCA when both causes of action hinge on conduct constituting harassment, oppression, or abuse.

### B. Rule 12(b)(6)

Defendant also urges the Court to dismiss Plaintiff's TCPA claim under Rule 12(b)(6). The TCPA creates liability for unsolicited text messages when the sender utilizes certain regulated technology: either (1) an automatic telephone dialing system ("ATDS") or (2) artificial or prerecorded voice messages. 47 U.S.C. §§ 227(b)(1)(A); 227(b)(1)(B). Defendant states that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff did not allege that Defendants used either type of regulated technology. (Doc. No. 19 at 10). Instead, Defendant alleges, Plaintiff simply contends that the violation occurred because Defendants' sent text messages to her phone without her consent. (*Id.*).

7

The Court finds that Plaintiff did allege that Defendants used technology regulated by the TCPA. Plaintiff states that "the lack of Plaintiff's obligations or connection to the debt at issue illustrates that Plaintiff's cellular phone number was roped into Defendants' collection efforts through technology and calling processes that are prohibited by the TCPA." (Doc. No. 13 at 4–5). Moreover, courts within the Fifth Circuit have found that, "no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage. Only the defendant has that knowledge." *Atkinson v. Pro Custom Solar LCC*, No. SA-21-CV-178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021). Thus, at this stage, Plaintiff need only plead enough facts to proceed with discovery. The Court finds that she has.

The Court must ask not whether it is probable that Defendant used ADTS, but whether it is pleaded and whether it is plausible. *See Iqbal*, 556 U.S. at 663 (2009) (quoting *Twombly*, 550 U.S. at 556). ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") Even if the Court finds it unlikely that Defendants used ADTS in this instance, it is surely possible. Thus, plaintiff has plead "enough facts to state a claim to relief that is plausible on its face" to defeat a motion to dismiss under Rule 12(b)(6).

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**. (Doc. No. 19). Defendant's Motion to Dismiss Plaintiff's Original Complaint is **DENIED** as moot. (Doc. No. 11).

SIGNED at this 31st day of October, 2024.

Andrew S. Hanen
United States District Judge